# STATE of Wisconsin, Plaintiff-Respondent,

## v.

# Howard NICHOLSON, Defendant-Appellant.†

Court of Appeals

*No. 87–2190. Submitted on briefs August 2, 1988.—Decided December 22, 1988.*

(Also reported in 435 N.W.2d 298.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Jack Longert* and *Legal Assistance To Institutionalized Persons Program,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Sally L. Wellman,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   Howard Nicholson appeals from an order denying his postconviction motion under sec. 974.06, Stats. He seeks relief from his 1983 conviction for attempted first-degree murder of John Sawle.[1] He asserts a right to a second trial because the court refused to submit to the jury the lesser-included offense of imperfect self-defense, sec. 940.05(2), Stats. The state agrees that because the trial court properly instructed the jury on perfect self-defense, refusal to instruct on imperfect self-defense was reversible error and an appeal would have resulted in a new trial. But Nicholson did not appeal his conviction, and the state contends that because the error is not constitutional, relief is unavailable under sec. 974.06. We agree with the state's position and affirm.

First-degree murder is the intentional killing of a human being. Sec. 940.01(1), Stats. Self-defense is a privilege but is limited to the intentional use of such force as the actor reasonably believes is necessary. The privilege does not include the use of force intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself

---

[1]As noted in footnote 2, Nicholson was also charged with attempted first-degree murder of Nick Olson, a witness to the Sawle incident. That conviction is not involved in this appeal.

or herself. Sec. 939.48(1), Stats. To cause the death of another person "unnecessarily, in the exercise of [the] privilege of self-defense" is a felony. Sec. 940.05(2). This felony is often described as "imperfect self-defense," sometimes as manslaughter self-defense or simply as manslaughter. We refer to it as imperfect self-defense. First-degree murder includes the lesser crime of imperfect self-defense. *State v. Gomaz,* 141 Wis. 2d 302, 303, 414 N.W.2d 626, 627–28 (1987).

The case was tried to a jury in early 1983. The evidence showed that in August 1982 Nicholson's wife left him and went to her parents' farm near Arena, Wisconsin, taking with her their minor child. On October 30, 1982 Nicholson went to the farm. His wife and child were not there. While Nicholson was in the farmhouse, his father-in-law, John Sawle, arrived with Nick Olson. Sawle feared that Nicholson was in the house, and entered the house carrying a shovel for protection. Sawle and Olson discovered Nicholson coming out of the bathroom. Nicholson explained why he was at the house and asked Sawle where his child was. Sawle replied only that the child was at the babysitter and would not give a more specific location. The phone rang and Sawle answered it. Olson and Nicholson went outside, but after a few minutes Nicholson went back inside.

Sawle testified that when he finished the call he turned to find Nicholson holding a pistol. Sawle ran for the door and heard gunfire. According to Sawle, when he was in the house he kept the shovel in his right hand down at his side and had done nothing to provoke Nicholson.

Nicholson testified that when Sawle finished his telephone call, Nicholson told him he would wait for his wife to return from work because she would bring the

child with her. Sawle angrily advanced toward Nicholson, holding the shovel in the air with both hands as if to hit Nicholson and began to swing it. Nicholson backed away into the kitchen table, pulled a pistol from his belt, told Sawle to stop, and fired when Sawle was about four feet away. He fired low and did not intend to kill Sawle.

Olson testified that shortly after Nicholson went into the house, Olson opened the kitchen door and saw Sawle crouched and running toward the door. Nicholson stood about two or three feet behind Sawle, pointed a pistol at him and fired it. Olson did not see where Sawle was holding the shovel.[2]

Sawle ran to a cornfield where he stayed until the police found him. He had been shot once in the right lower quadrant of his abdominal cavity. The entry wound was next to his right hipbone.

After the instruction conference, the trial court concluded that it should submit only attempted first-degree murder, the lesser-included offense of endangering safety by conduct regardless of life, and the perfect self-defense instruction. Under Wisconsin law, if the charged crime includes a lesser uncharged crime, the court must, if requested, instruct the jury on both crimes if under a reasonable view of the evidence the defendant could be acquitted of the greater and found guilty of the lesser. *State v. Muentner,* 138 Wis. 2d 374, 387, 406 N.W.2d 415, 421 (1987). By statute, first-

---

[2] Nicholson was also charged with attempted first-degree murder of Olson, who testified that after he saw Sawle shot, he ran and was shot in the back and then in the head. The jury found Nicholson not guilty of Olson's attempted murder by reason of insanity. The jury refused to make the same finding in connection with the attempted murder of Sawle.

degree murder includes the lesser crime of imperfect self-defense. Sec. 939.66(2), Stats. The court concluded that the evidence did not warrant an imperfect self-defense instruction. Nicholson objected to the court's refusal to instruct the jury on imperfect self-defense.

The jury found Nicholson guilty of attempted first-degree murder of Sawle. On April 22, 1983 the court entered a judgment of conviction.[3] Nicholson did not appeal, and the time to take an appeal has long expired.[4]

On March 19, 1987, Nicholson moved for postconviction relief under sec. 974.06, Stats. The basis for the motion was the trial court's refusal to instruct the jury on the lesser-included offense of imperfect self-defense. The trial court denied the motion on grounds that the issue should have been raised by direct appeal, was not of constitutional or jurisdictional dimension and therefore could not be raised under sec. 974.06, and because the evidence did not warrant an instruction on imperfect self-defense.

After the trial court denied Nicholson's motion, the *Gomaz* court held that it was reversible error for a trial court to refuse a request to instruct the jury on imperfect self-defense when the evidence warranted instructing the jury on perfect self-defense. *Gomaz,* 141

[3]The court sentenced Nicholson to twelve years to be served concurrently with the sec. 971.17, Stats., commitment on the insanity verdict on the Olson charge.

[4]Nicholson offers no explanation for his failure to appeal, even though *Ross v. State,* 61 Wis. 2d 160, 211 N.W.2d 827 (1973), decided ten years before his conviction, can be read to make instruction on imperfect self-defense mandatory upon request when the jury is instructed on self-defense. *Gomaz,* 141 Wis. 2d at 309–10, 414 N.W.2d at 630.

Wis. 2d at 309, 414 N.W.2d at 630. The *Gomaz* court explained:

> [I]f in the present case the jury was correctly instructed, as the state now concedes, as to perfect self-defense, *an independent analysis of the propriety of an imperfect self-defense as a lesser included offense is not required* since under *Ross v. State,* 61 Wis. 2d 160, 211 N.W.2d 827 (1973), it is inconsistent and reversible error to deny the imperfect self-defense instruction where an instruction is given as to perfect self-defense. The privilege of self-defense under sec. 939.48(1), Stats., is the "right to use force against another to prevent what the actor reasonably believes to be an unlawful interference with his person." *Ross,* 61 Wis. 2d at 166. To be within the scope of the absolute privilege of sec. 939.48, however, both the actor's belief and the amount of force used must be reasonable. Manslaughter, under sec. 940.05(2), operates where the actor actually believed the force used was necessary for self-defense but the belief or amount of force used was unreasonable. *Id.* at 166–68; *Roe v. State,* 95 Wis. 2d 226, 243–44, 290 N.W.2d 291 (1980). Thus, and as noted in *Ross,* since a self-defense instruction requires examination of "reasonableness," *it is inconsistent and improper to deny a manslaughter self-defense instruction where the jury is properly, as the state concedes, instructed as to the privilege of complete self-defense.*

*Id.* at 309–10, 414 N.W.2d at 630 (footnotes omitted, emphasis added).[5]

---

[5]Thus, the *Gomaz* analysis of imperfect self-defense makes unnecessary an independent review of the evidence to determine whether the defendant could reasonably be found guilty of the lesser-included crime.

The state concedes that Nicholson's own testimony warranted an instruction on perfect self-defense. Under *Gomaz,* an instruction on imperfect self-defense was therefore also warranted, and the trial court erred in refusing to instruct on imperfect self-defense. The state concedes that the error was reversible, had Nicholson appealed from his conviction, but contends that because the error was neither jurisdictional nor constitutional, Nicholson's sec. 974.06, Stats., motion does not reach it.

Section 974.06(1), Stats., allows a prisoner to seek postconviction relief on jurisdictional or constitutional grounds even if, as here, the time to appeal from a criminal conviction has expired. Such a motion cannot be used as a substitute for an appeal. *Sass v. State,* 63 Wis. 2d 92, 95, 216 N.W.2d 22, 24 (1974). It cannot reach procedural errors which fail to reach constitutional or jurisdictional status. *Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837, 845 (1972).

Nicholson contends that the trial court's error is constitutional. He asserts that if a criminal defendant charged with a homicide or an attempted homicide is entitled to a perfect self-defense instruction, it is mandatory under *Gomaz* that the trial court submit the imperfect self-defense instruction. He claims that *Gomaz* suggests that the refusal amounted to a denial of his fifth amendment right to due process of law and to a fair trial, as well as the right to a trial by jury. He asserts that failure to give the lesser-included offense instruction sabotaged the integrity of the jury's fact-finding and enhanced the likelihood of conviction on the greater offense and therefore the trial court's error in refusing to submit an imperfect self-defense instruction denied him due process. He also argues that failure

to give the requested instruction relieved the state of its burden to prove all elements of a crime and thus violated due process. He relies upon the right to a trial by jury guaranteed by art. I, secs. 5 and 7, of the Wisconsin Constitution and the sixth and fourteenth amendments to the United States Constitution.

We agree that under *Gomaz,* if a criminal defendant is entitled to a perfect self-defense instruction when charged with a homicide or attempted homicide, the trial court must submit the imperfect self-defense instruction, at least when the instruction has been requested.[6] No other conclusion is consistent with the logic of *Gomaz.*

Nicholson argues that this procedural error sabotaged the integrity of the factfinding process and then equates that integrity with due process. *Gomaz* suggests that the tie exists. In *Gomaz,* the defendant had objected to omission of the imperfect self-defense instruction. *Gomaz,* 141 Wis. 2d at 324, 414 N.W.2d at 636. By way of footnote, the *Gomaz* court said in dicta that even if the defendant had not objected, the supreme court "would not be precluded from review of the instructions since the challenged instructions go 'to the integrity of the fact finding process,'" citing *State v. Shah,* 134 Wis. 2d 246, 254, 397 N.W.2d 492, 496 (1986); *State v. Baldwin,* 101 Wis. 2d 441, 446, 304 N.W.2d 742, 746 (1981); and *Brown v. State,* 59 Wis. 2d 200, 213, 207

---

[6]Whether a trial court must give an imperfect self-defense instruction never requested is not before us. It is doubtful whether the court of appeal has jurisdiction to decide that question. *See State v. Schumacher,* 144 Wis. 2d 388, 409, 424 N.W.2d 672, 680 (1988) (court of appeals lacks jurisdiction to find that unobjected-to instructions go to the integrity of the factfinding process). *Schumacher* did not involve an instruction claimed to be mandatory for constitutional reasons.

N.W.2d 602, 609 (1973). *Gomaz,* 141 Wis. 2d at 322 n. 13, 414 N.W.2d at 635. But the *Gomaz* court did not equate integrity of the factfinding process, without more, with due process. *Gomaz* contains no reference to the United States or Wisconsin Constitutions.[7] And no case has been called to our attention which holds that reversible or harmful error, by itself, results in a denial of due process.

The principal case declaring unconstitutional a refusal to give the jury a lesser-included instruction was decided in a narrow context which cannot arise under Wisconsin law. In *Beck v. Alabama,* 447 U.S. 625 (1980), the United States Supreme Court held that the death penalty could not be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser-included noncapital offense and when the evidence would have supported such a verdict. *Id.* at 627. No crime is punishable by death in this state. Identifying the constitutional basis for the *Beck* decision is therefore critical to whether the *Beck* rationale applies to noncapital cases.

---

[7]*Shah* states that if failure to give an instruction goes to the integrity of the factfinding process, the supreme court may review the error even if no objection was made. 134 Wis. 2d at 254, 397 N.W.2d at 496. *Baldwin* said that a defendant's challenge on appeal to a disjunctive jury instruction raised constitutional questions which went "directly to the integrity of the factfinding process, and the defendant's failure to object at trial should not preclude him from raising them on appeal." 101 Wis. 2d at 446, 304 N.W.2d at 746. The *Baldwin* quotation is a far cry from a holding that errors affecting the integrity of the factfinding process necessarily raise constitutional issues. The *Brown* citation supports only the proposition that errors not raised during trial, especially with respect to alleged error in jury instructions, are waived, except in "compelling circumstances." 59 Wis. 2d at 213–14, 207 N.W.2d at 609.

Although it did not rely on any one constitutional basis for its decision, the *Beck* Court noted the "significant constitutional difference between the death penalty and lesser punishment." *Id.* at 637. It also noted that unavailability of a "third option," that of convicting on a lesser-included offense, could encourage a jury to convict on the charged crime for an impermissible reason: the belief that the defendant is guilty of some serious crime and should be punished. Lack of a third option could also encourage the jury to acquit for an equally impermissible reason: the belief that whatever his crime, the defendant did not deserve death. The Court concluded that these factors "introduce a level of uncertainty and unreliability into the factfinding process that cannot be tolerated in a capital case." *Id.* at 642–43. The Court added, "We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case." *Id.* at 638 n. 14.

In a later capital case, the United States Supreme Court described *Beck* as holding "that due process requires that a lesser-included offense instruction be given when the evidence warrants such an instruction." *Hopper v. Evans,* 456 U.S. 605, 611 (1982). However, the Court also said "Our holding in *Beck,* like our other Eighth Amendment decisions ..., was concerned with insuring that sentencing discretion in capital cases is channelled so that arbitrary and capricious results are avoided." *Id.*

When deciding whether a lesser-included offense instruction must be given in a noncapital case, the United States Courts of Appeals have reached different results. For the conclusion that *Beck* applies only to capital cases, *see Alexander v. McCotter,* 775 F.2d 595, 601 (5th Cir. 1985); *Nichols v. Gagnon,* 710 F.2d 1267,

1270–72 (7th Cir. 1983), *cert. denied,* 466 U.S. 940 (1984); and *Perry v. Smith,* 810 F.2d 1078, 1080 (11th Cir. 1987). *See also Chavez v. Kirby,* 848 F.2d 1101, 1103 (10th Cir. 1988) (*Beck* applies only to capital cases in which death penalty is imposed). Some circuits have concluded that *Beck* applies to noncapital cases. *See Vujosevic v. Rafferty,* 844 F.2d 1023, 1027 (3d Cir. 1988), and *Bagby v. Sowders,* 853 F.2d 1340, 1345 (6th Cir. 1988). Thus, the decisions of the federal courts of appeal provide no clear guidance on this issue.[8]

State courts which have faced this issue have also reached conflicting results. At least three courts have refused to find a due process right to instruction on a lesser-included offense in noncapital cases. *See State v. McIntosh,* 506 A.2d 104, 107 (Conn. 1986); *State v. Skjonsby,* 319 N.W.2d 764, 776 (N.D. 1982); and *Thompson v. State,* 748 P.2d 526, 529 (Okla. Crim. App. 1988). Some state courts have found a due process right to instruction on lesser-included offenses. *See State v. Oldroyd,* 685 P.2d 551, 555 (Utah 1984); *State v. Bruns,* 429 So. 2d 307, 310 (Fla. 1983) (fundamental trial fairness requires instruction on lesser-included offense upon defendant's timely request); *but see Jones v. State,* 484 So. 2d 577, 578 (Fla. 1986) (defendant in noncapital case did not have due process right to have

---

[8]For law review articles regarding the right to a lesser-included offense instruction in a noncapital case, *see* Note, *Beck v. Alabama: The Right to a Lesser-Included Offense Instruction in Capital Cases,* 1981 Wis. L. Rev. 560, 570–83; Ettinger, *In Search of a Reasoned Approach to the Lesser-Included Offense,* 50 Brooklyn L. Rev. 191, 209–28 (1984); Hoffheimer, *Habeas Corpus Review of State Trial Court Failure to Give Lesser-Included Offense Instructions,* 16 U. Mich. J.L. Reform 617 (1983); and Blair, *Constitutional Limitations on the Lesser-Included Offense Doctrine,* 21 Amer. Crim. L. Rev. 445, 462–76 (1984).

jury instructed as to lesser-included offenses, where defendant did not request such instruction). One state has found a constitutional right to instruction on lesser-included offenses under its state constitution. *People v. Geiger,* 674 P.2d 1303, 1307 (Cal. 1984).

Since 1958 Wisconsin has recognized that the state's interest in justice is served by submission of a lesser-included offense instruction when requested by either the prosecution or the defense. *Zenou v. State,* 4 Wis. 2d 655, 668, 91 N.W.2d 208, 215 (1958). "Both the state and the defendant have a right to have the lower degree submitted so that the jury will not be subjected to the choice of either acquitting or convicting of the higher degree where it is really convinced of only the lower degree." *Id.* No reported case in this state has decided whether the requirement that a lesser-included offense instruction be submitted is constitutionally based.

Bereft of firm guidance, we decide for ourselves the significance of the *Beck* decision in a noncapital case. We conclude that the uniqueness of the death penalty led the Court in *Beck* to depart from the usual rule that jurors are presumed to obey their oaths and to render a true verdict on the evidence presented to them. When, as here, the death penalty cannot be imposed, failure to instruct the jury on a lesser-included offense does not violate due process.

"The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process." *Richardson v. Marsh,* 481 U.S. 200, 211 (1987). This presumption is only discarded in certain contexts, where "the risk that

the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant that the practical and human limitations of the jury system cannot be ignored." *Id.* at 207. In *Richardson,* the Court refused to discard this presumption, because it found no "overwhelming probability" that the jury would not or could not follow instructions. *Id.* at 208.

*Beck* discarded the presumption that juries follow their instructions because "the consequences of failure" were so vital to the defendant. Much of the *Beck* opinion concentrates on the death penalty. The *Beck* Court said that the risk of an unwarranted conviction "cannot be tolerated in a case in which the defendant's life is at stake," and described the "significant constitutional difference between the death penalty and lesser punishments." 447 U.S. at 637. And, as we have noted, the *Hopper* Court later referred to *Beck* as one of its eighth amendment decisions concerned with sentencing discretion in capital cases. *Hopper,* 465 U.S. at 611.

In our view, then, the Court impliedly grounded the decision in *Beck* in the fourteenth *and* eighth amendments because of the consequences to the defendant should a jury not follow its instructions in a capital case. We conclude that a Wisconsin defendant's right to request a lesser-included offense instruction, a request perhaps based on the fear that the jury might otherwise depart from its oath, is not grounded in due process under the United States Constitution because the death penalty could never be imposed.[9]

---

[9]It is worth noting that a defendant may request a lesser-included offense instruction, not to prevent the jurors from violating

Nicholson also argues that failure to give the lesser-included offense instruction impermissibly relieved the state of its burden to prove that Nicholson had no actual belief that he needed to defend himself with force, and thus violated due process. He cites no cases which support this specific contention. He relies on *Moes v. State,* 91 Wis. 2d 756, 766, 284 N.W.2d 66, 70 (1979), to support the contention that the state must disprove a defendant's self-defense claim beyond a reasonable doubt.

While *Moes* held that Wisconsin law requires the state to disprove statutory affirmative defenses beyond a reasonable doubt, the court noted that this is *not* required by federal due process. *Id.* at 768, 284 N.W.2d at 71. *Moes* itself was premised on state statutory law, not the Wisconsin Constitution. *State v. Saternus,* 127 Wis. 2d 460, 474 n. 10, 381 N.W.2d 290, 296 (1986).

The United States Supreme Court has never held that due process requires a state to disprove affirmative defenses beyond a reasonable doubt. The Court has said that

> the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule ....

*Patterson v. New York,* 432 U.S. 197, 210 (1977). The Court has even held that due process allows states to place the burden of proving affirmative defenses on the defendant. *Martin v. Ohio,* 480 U.S. 228, 233 (1987).

their oath, but to permit them to do so for his benefit by acquitting on the greater offense and finding him guilty on the lesser, when they ought not.

367

Nicholson insists that his due process rights under the Wisconsin Constitution were denied by the trial court's refusal to instruct on the lesser-included offense. He bases his argument solely on federal decisions. When urged to interpret our state constitution differently from the United States Constitution, we expect the parties to develop an argument based on the Wisconsin Constitution. We expect a discussion of the history of the constitutional provision relied on, a discussion of the case law interpreting the provision, and a discussion of the purpose of the provision. *State v. Pitsch,* 124 Wis. 2d 628, 646, 369 N.W.2d 711, 721 (1985). Nicholson's brief on appeal fails to show why we should grant relief because of due process considerations under the state constitution even if we do not do so under the federal constitution. For that reason, we pursue the subject no further. We conclude he has failed to show that his right to due process under the constitution of this state has been violated.

We turn next to Nicholson's claim that his right to trial by jury under the United States and Wisconsin Constitutions has been violated. The only argument to the trial court in this regard was that failure to submit the lesser-included offense instruction prevented the jury from deciding a factual issue and therefore subverted the role of the jury as the finder of fact. No case law, state or federal, tending even indirectly to support Nicholson's claim is cited to us in this appeal. Under the circumstances, we deem that the argument is not sufficiently developed for us to pursue it further. *Compare State v. Shaffer,* 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980) (arguments not supported by citations to legal authority will not be considered).

Nicholson has failed to show that the trial court's failure to submit a lesser-included offense instruction on imperfect self-defense, although an error which probably merited reversal in a direct appeal, violated the United States Constitution or the Wisconsin Constitution. For that reason, the trial court properly denied his motion under sec. 974.06, Stats., and we affirm the order of denial.

*By the Court.*—Order affirmed.