**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**John P. SHERMAN, Defendant–Appellant.**

No. 04CA2424.

Colorado Court of Appeals, Div. I.

Nov. 16, 2006.

Rehearing Denied March 15, 2007.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

John P. Sherman, Pro Se.

Opinion by Judge BERNARD.

Defendant, John P. Sherman, appeals the trial court order denying his Crim. P. 35(c) motion. We affirm.

Defendant was convicted of first degree murder and sentenced to life in prison with the possibility of parole. A division of this court affirmed the judgment of conviction on direct appeal. *People v. Sherman,* (Colo. App. No. 87CA1181, Feb. 15, 1990)(not published pursuant to C.A.R. 35(f) ). Seventeen years after he was convicted, defendant filed a motion for postconviction relief under Crim. P. 35(c). This motion was not barred by the statute of limitations upon collateral attacks because defendant had been convicted of a class one felony. *See* § 16–5–402(1),

C.R.S.2006. The trial court denied defendant's motion without a hearing. This appeal followed.

## I. Ineffective Assistance of Counsel

Defendant contends the trial court erred in concluding defense counsel's failure to explore the option of a plea bargain did not constitute ineffective assistance of counsel. We disagree.

To establish a claim for ineffective assistance of counsel, a defendant must show counsel's performance was outside the range of professionally competent assistance and there is a reasonable probability that, but for counsel's deficient performance, the outcome of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. People,* 871 P.2d 769 (Colo.1994).

■ When evaluating a defendant's claim of ineffective assistance based on defense counsel's omissions in advising him, the court must judge the reasonableness of counsel's conduct on the basis of the factual circumstances of the particular case, viewed in light of the prevailing standards of minimally acceptable professional conduct. *People v. Williams,* 908 P.2d 1157 (Colo.App.1995).

■ Defense counsel's failure to convey an actual plea offer constitutes deficient performance even if the defendant otherwise receives a fair trial. *People v. Perry,* 68 P.3d 472 (Colo.App.2002). However, we are unaware of any authority in Colorado that would suggest defense counsel has a duty to initiate plea negotiations.

Authority in other jurisdictions indicates that although defense counsel does not have a duty to initiate plea negotiations, under certain circumstances the failure to do so could constitute ineffective assistance of counsel. *See Hawkman v. Parratt,* 661 F.2d 1161 (8th Cir.1981); *United States v. Turchi,* 645 F.Supp. 558 (E.D.Pa.1986), *aff'd,* 815 F.2d 696 (3d Cir.1987)(unpublished table decision); *People v. Brown,* 177 Cal.App.3d 537, 223 Cal.Rptr. 66 (1986); *Avans v. State,* 251 Ga.App. 575, 554 S.E.2d 766 (2001); *People v. Palmer,* 162 Ill.2d 465, 205 Ill.Dec. 506, 643 N.E.2d 797 (1994); *State v. Holm,* 91 Wash.

App. 429, 957 P.2d 1278 (1998); *see also* Gregory G. Sarno, Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Plea Bargaining,* 8 A.L.R.4th 660 § 4 (1981).

We concur with these authorities and conclude the proper question under *Strickland* is whether, in light of the particular facts and circumstances of the case, defense counsel's failure to initiate plea negotiations fell below an objective standard of reasonableness. *See People v. Brown, supra; State v. Holm, supra.*

In *United States v. Turchi, supra,* the court held defense counsel's failure to initiate plea negotiations did not constitute deficient performance where the defendant maintained his innocence and expressly denied involvement in the crime, and counsel also believed the defendant was innocent. *See also Dwyer v. Comm'r of Corr.,* 69 Conn.App. 551, 796 A.2d 1212 (2002)(defense counsel was not ineffective for failing to inform defendant state was willing to engage in plea negotiations where defendant was adamant that he wished to go to trial and maintained his innocence); *State v. Simmons,* 5 P.3d 1228 (Utah Ct.App.2000) (finding no ineffective assistance of counsel where it was unclear whether defense counsel discussed plea negotiations with defendant but defendant maintained his innocence).

■ In this case, although defendant now emphasizes the strength of the evidence against him, he adamantly maintained his innocence before and after trial. Prior to sentencing, defense counsel wrote a letter to the probation department asserting his belief in defendant's innocence and recounting the numerous alibi witnesses who, according to the letter, thoroughly and consistently confirmed defendant's account of the events. In an affidavit submitted in this postconviction proceeding, defense counsel wrote defendant insisted he was innocent throughout counsel's representation and was not interested in any disposition short of dismissal of the charges. Defendant's case is, therefore, strikingly similar to the facts discussed in *United States v. Turchi, supra; Dwyer v. Commissioner of*

*Correction, supra;* and *State v. Simmons, supra.*

Under these circumstances, we conclude defense counsel's failure to explore the option of a plea bargain did not constitute deficient performance.

As an alternative basis for its ruling, the trial court found defendant failed to show he was prejudiced by his counsel's actions. We agree there is evidence in the record to support this finding.

■ In evaluating such a claim, a trial court should consider whether a defendant has shown a reasonable probability the prosecution would have made an offer, the defendant would have accepted it, and the trial court would have approved it. *United States v. Boone*, 62 F.3d 323 (10th Cir.1995); *cf. People v. Perry, supra.*

Here, defendant's present assertion he would have accepted a plea offer is contradicted by evidence in existence at the time of his trial. Defendant's pretrial statements about his innocence and his counsel's posttrial letter to the probation department offering counsel's opinion of defendant's innocence indicate it is unclear whether defendant would have accepted any proposed plea disposition. His counsel's recent affidavit provides further support for this conclusion. Thus, seventeen years after defendant's conviction, it would be speculation to conclude there is a reasonable possibility defendant would have accepted a plea bargain if one had been offered shortly before his trial. *See Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.1986) ("we seriously doubt ... [defendant's] after-the-fact testimony regarding [his wish to accept a plea disposition] in and of itself would be sufficient to establish that prior to trial, but for [his attorney's] actions, there was a reasonable probability he would have accepted the plea agreement"); *People v. Palmer, supra* (rejecting ineffective assistance claim for defense counsel's failure to initiate plea negotiations as too speculative to establish prejudice); *Ryan v. Palmateer*, 338 Or. 278, 108 P.3d 1127 (2005)(defendant's bare assertion he would have accepted a favorable plea agreement was insufficient to carry his burden of proving that defense counsel failed to provide adequate representation).

Hence, the trial court correctly concluded defense counsel's failure to initiate plea negotiations did not constitute ineffective assistance of counsel.

## II.  Findings of Fact

Defendant contends the trial court did not make proper findings of fact regarding his allegations of ineffective assistance of counsel. We disagree.

■ The trial court is bound to determine the issues and make findings of fact and conclusions of law when ruling on a defendant's motion for postconviction relief, *Swift v. People*, 174 Colo. 259, 488 P.2d 80 (1971), although failure to do so may be harmless error. *People v. Russell*, 36 P.3d 92 (Colo. App.2001).

In this case, the trial court issued a written order denying defendant's Crim. P. 35(c) motion. The court set forth the *Strickland* standard for ineffective assistance of counsel, noted the affidavits of defendant and defense counsel, considered the arguments of defendant and the People, and ultimately concluded defendant's position was unpersuasive.

■ Thus, we conclude the trial court made sufficient findings of fact and conclusions of law in ruling on defendant's motion.

## III.  Jury Instruction

Defendant contends the trial court erred in concluding his allegation of instructional error did not state a claim cognizable under Crim. P. 35(c). We disagree.

### A.  Abuse of Process

Defendant originally raised this instructional issue in his May 1987 motion for new trial, and he also listed it as a potential issue in his August 1987 notice of appeal, although the opinion resolving the appeal did not address it. The People argue defendant's reassertion of the same issue in this case constitutes an abuse of process and therefore urge us not to address the merits of his argument.

In *People v. Rodriguez*, 914 P.2d 230, 253 (Colo.1996), the supreme court held a defen-

dant may, in some circumstances, raise issues of constitutional error in a postconviction proceeding although the same issues could have been raised on appeal. In doing so, however, the court recognized the People may be entitled to raise the affirmative defense of abuse of process. The court cited with approval ABA Standards for Criminal Justice 22–6.2 (2d ed.1986). In relevant part, that standard provides:

> (b) Where an applicant raises in a subsequent application a factual or legal contention which the applicant did not use due diligence in
>
> (i) raising in an earlier application, or,
>
> (ii) having raised the contention in the trial court, failed to pursue the matter on appeal,
>
> a court may deny relief on the ground of an abuse of process. Abuse of process should be an affirmative defense to be pleaded and proved by the state.

■ In this case, the People did not plead or prove an abuse of process in the trial court. Hence, this affirmative defense is not available. *See People v. Hansen,* 972 P.2d 283 (Colo.App.1998) (finding the People failed to meet their burden of proving an abuse of process where the record was devoid of information providing specificity as to the claim defendant allegedly abandoned on appeal).

### B. Instructional Error

Defendant contends his claim the trial court erred in refusing to instruct the jury on the lesser included offense of second degree murder is cognizable under Crim. P. 35(c). We disagree.

#### 1. Scope of Review in Crim. P. 35(c) Proceedings

The trial court ruled:

> Defendant argues that it was ... a violation of Defendant's Due Process rights for the trial court to not have instructed the jury on the lesser-included offense of second degree murder. I decline to entertain Defendant's argument because I find that, in general, errors in jury instructions do not constitute fundamental error sufficient to merit postconviction relief.

Thus, the issue of whether defendant's claim can be considered in a Crim. P. 35(c) proceeding is squarely before us.

We recognize there are decisions holding that errors other than constitutional ones can be considered in Crim. P. 35(c) proceedings. *People v. Muniz,* 667 P.2d 1377, 1382, n. 11 (Colo.1983) (request to vacate guilty plea because of violation of Crim. P. 11 resolved on basis of rule rather than Due Process Clause); *People v. Boykin,* 631 P.2d 1149 (Colo.App.1981) (challenge to validity of revocation of deferred sentence).

We see these decisions as being inconsistent with the history of Crim. P. 35(c). The predecessor to the present Crim. P. 35(c) was promulgated in 1961 to allow review of constitutional violations barred by Colorado's narrow concept of habeas corpus. *Peters v. Dillon,* 227 F.Supp. 487 (D.Colo.1964), *aff'd,* 341 F.2d 337 (10th Cir.1965).

The relief afforded by Crim. P. 35(c) was designed to be substantially similar to the relief available under 28 U.S.C. § 2255. *Ruark v. Tinsley,* 350 F.2d 315 (10th Cir. 1965). In *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), the Supreme Court construed 28 U.S.C. § 2255 to allow collateral attacks on convictions only when there has been a fundamental defect constituting a miscarriage of justice, such as when convictions or sentences have been entered without jurisdiction or when there are claims of constitutional error.

Part of *Addonizio's* analysis focused on how the common law writ of coram nobis had been similarly construed to limit its application to fundamental errors rendering the proceedings invalid. In *Hackett v. People,* 158 Colo. 304, 307, 406 P.2d 331, 332 (1965), the supreme court indicated Crim. P. 35(b), the predecessor to today's Crim. P. 35(c), fulfilled the purposes of the obsolete writ of coram nobis by providing a postconviction remedy to prisoners in custody for sentences "imposed in violation of the prisoner's constitutional rights." Thus, *Addonizio's* limitations on 28 U.S.C. § 2255 are instructive.

Cases interpreting Crim. P. 35(c) have indicated it was promulgated for the express

purpose of allowing defendants to raise constitutional claims in postconviction proceedings. In *People v. Hubbard,* 184 Colo. 243, 247, 519 P.2d 945, 947 (1974), the supreme court stated: "Although Crim. P. 35[ (c) ] is primarily intended to provide a procedure which will permit judicial review of alleged constitutional infirmities in criminal proceedings, it is couched in language which recognizes that there must be some finality in the reviewing process." *See also People v. Germany,* 674 P.2d 345, 350 (Colo.1983)(analyzing § 18–1–410, C.R.S.2006, the statutory counterpart to Crim. P. 35(c); "state's interest in finality is not a justification for permitting unconstitutional convictions to stand"); *Taylor v. People,* 155 Colo. 15, 17, 392 P.2d 294, 295 (1964)(Crim.P.35(c) "provides a convicted person with a means to attack any alleged violations of his alleged constitutional rights").

■ *Rodriguez, supra,* reaffirmed that Crim. P. 35(c) is focused on allegations of constitutional error: "[P]ostconviction proceedings have a dual purpose: to prevent constitutional injustice and to bring finality to judgment." *People v. Rodriguez, supra,* 914 P.2d at 252. The supreme court has repeated this proposition at least twice. *Edwards v. People,* 129 P.3d 977, 982 (Colo. 2006); *People v. Schneider,* 25 P.3d 755, 760 (Colo.2001). Thus, as the purpose of postconviction proceedings is to correct constitutional error, we conclude a district court may deny a motion for postconviction relief without a hearing if the allegations do not raise a constitutional claim. *People v. Long,* 126 P.3d 284 (Colo.App.2005).

### 2. Instructions on Lesser Included Offenses

■ As a general rule, errors in jury instructions do not amount to constitutional error sufficient to merit postconviction review. *People v. Rodriguez, supra* (declining to consider defendant's assertions of nonconstitutional instructional error in a Crim. P. 35(c) motion); *People v. Shearer,* 181 Colo. 237, 508 P.2d 1249 (1973).

In *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980), the Supreme Court held a jury in a capital case must be instructed on lesser included noncapital offenses if the evidence supports such an instruction. The Court expressly declined to address the issue whether the Fifth Amendment's Due Process Clause mandates the giving of lesser included offense instructions in cases in which the death penalty is not at issue. *Beck v. Alabama, supra,* 447 U.S. at 638 n. 14, 100 S.Ct. at 2390.

The Court subsequently made it clear *Beck's* rationale was rooted in Eighth Amendment concerns about the reliability of the determination of guilt in a capital case. *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2052, 72 L.Ed.2d 367 (1982)("Our holding in *Beck,* like our other Eighth Amendment decisions in the past decade, was concerned with insuring that sentencing discretion in capital cases is channeled so that arbitrary and capricious results are avoided.").

The circuits considering the issue left open by *Beck's* footnote 14 have reached different conclusions about whether, in a habeas corpus proceeding, the failure to instruct a jury on a lesser included offense is constitutional error. The Fifth, Ninth, Tenth, and Eleventh Circuits have determined there is no federal due process issue and do not review such claims. *Valles v. Lynaugh,* 835 F.2d 126 (5th Cir.1988); *Solis v. Garcia,* 219 F.3d 922 (9th Cir.2000); *Chavez v. Kerby,* 848 F.2d 1101 (10th Cir.1988); *Perry v. Smith,* 810 F.2d 1078 (11th Cir.1987). The First, Sixth, Seventh, and Eighth Circuits have held that a due process violation occurs in a noncapital case only when the failure to instruct the jury on a lesser included offense creates "a complete miscarriage of justice [ ] or an omission inconsistent with the rudimentary demands of fair procedure." *Tata v. Carver,* 917 F.2d 670, 671 (1st Cir.1990)(quoting *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.1990)); *Bagby v. Sowders, supra; see Williford v. Young,* 779 F.2d 405 (7th Cir. 1985); *Pitts v. Lockhart,* 911 F.2d 109 (8th Cir.1990). The Second Circuit has yet to rule squarely on the issue. *See Rice v. Hoke,* 846 F.2d 160 (2d Cir.1988). Only the Third Circuit has found there is a general due process right to have a jury instructed on a

lesser included offense in a noncapital case. *Vujosevic v. Rafferty,* 844 F.2d 1023 (3d Cir. 1988).

State courts have also reached divergent results. *Compare State v. Whittle,* 156 Ariz. 405, 752 P.2d 494 (1988)(no federal due process right to a sua sponte lesser included offense instruction in a noncapital case); *State v. McIntosh,* 199 Conn. 155, 506 A.2d 104 (1986)(no federal due process right to a lesser included offense instruction in a noncapital case); *State v. Wallace,* 475 N.W.2d 197 (Iowa 1991) (same); *State v. Sheppard,* 253 Mont. 118, 832 P.2d 370 (1992)(same); *State v. Skjonsby,* 319 N.W.2d 764 (N.D. 1982)(same); *Thompson v. State,* 748 P.2d 526 (Okla.Crim.App.1988) (same); *and State v. Nicholson,* 148 Wis.2d 353, 435 N.W.2d 298 (Ct.App.1988)(same), *with State v. Bruns,* 429 So.2d 307 (Fla.1983) (due process right to lesser included offense instruction when defendant requests one); *and State v. Oldroyd,* 685 P.2d 551 (Utah 1984) (due process right to lesser included offense instruction).

In Colorado, a division of this court found a trial court's failure to give an instruction on a lesser included offense was not subject to review under the standard for constitutional error. *People v. Medina,* 51 P.3d 1006 (Colo. App.2001). The supreme court affirmed the division's judgment on somewhat different grounds in *Mata–Medina v. People,* 71 P.3d 973 (Colo.2003). The supreme court recognized *Beck* left open the issue of whether defendants are entitled to lesser included offense instructions in noncapital cases. However, the court relied upon the holding in *Schad v. Arizona, supra,* that when a jury in a capital case is given the option to convict on a lesser included noncapital offense, *Beck* does not require additional instructions on other lesser included offenses.

*Mata–Medina v. People, supra,* does not apply here because defendant requested only one lesser included offense instruction, for second degree murder, which the trial court declined to give to the jury. Thus, we are faced with the issue left open in *Beck.*

We find the federal and state authority cited above concluding there is no due process right to a lesser included offense instruction, including the division's decision in *People v. Medina, supra,* to be persuasive and follow it here. We find this authority compelling particularly because the Supreme Court has, in the years since *Beck* was decided, limited its scope to Eighth Amendment issues implicated in death penalty cases.

Accordingly, the trial court properly concluded defendant's claim the trial court erred in refusing to instruct the jury on the lesser included offense of second degree murder was not a cognizable constitutional claim under Crim. P. 35(c).

### IV. Hearing

Last, defendant contends the trial court erred in denying his motion without a hearing. We disagree.

The court may deny a Crim. P. 35(c) motion without a hearing if the motion, the files, and the record clearly establish the defendant is not entitled to relief. *People v. DiGuglielmo,* 33 P.3d 1248 (Colo.App.2001).

In this case, the record clearly establishes defendant is not entitled to relief. Hence, the trial court did not err in denying his motion without a hearing.

The order is affirmed.

Judge MÁRQUEZ and Judge ROTHENBERG concur.